COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:   (415) 693-2000
Facsimile:    (415) 693-2222

HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
ELIZABETH L. STAMESHKIN (260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:   (650) 843-5000

PHILLIP E. MORTON (*pro hac vice*)
(pmorton@cooley.com)
Reston Town Center, 11951 Freedom  Dr.
Reston, VA 20190-5656
Telephone: (703) 456-8000

Attorneys for Defendant Facebook, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| STEVE MORSA,<br><br>                Plaintiff,<br><br>        v.<br><br>FACEBOOK, INC.<br><br>                Defendant. | Case No.  8:14-cv-00161-JLS-JPR<br><br>**FACEBOOK, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. SECTION 101**<br><br>DATE: December 19, 2014<br>TIME: 2:30 PM<br>COURTROOM: 10A<br><br>Hon. Josephine L. Staton |

# Table of Contents

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.   BACKGROUND ...................................................................................... 2

A.   The Patents-in-Suit ....................................................................... 2

1.   The '337 Patent Claims Abstract Ideas ................................... 2

2.   The '020 Patent Claims Abstract Ideas ................................... 5

3.   The Dependent Claims Add Nothing of Patentable
Significance ............................................................................. 6

B.   Plaintiff Only Overcame § 101 Rejections at the Patent Office
by Relying on Pre-Alice Arguments .............................................. 7

C.   The Technology Described in the Specification is Generic and
Was Copied from Prior Art ............................................................ 8

III.   ARGUMENT ........................................................................................ 10

A.   Determination of Patent Eligibility is Appropriate on a Rule
12(c) Motion for Judgment on the Pleadings ................................ 10

B.   The Alice Two-Part Test .............................................................. 12

C.   The Asserted Claims of the '337 Patent are Directed to Abstract
Ideas ........................................................................................... 14

D.   The Asserted Claims of the '020 Patent are Directed to Abstract
Ideas ........................................................................................... 18

E.   The Asserted Claims Do Not Contain Anything That
Transforms the Patent-Ineligible Abstract Ideas into Patent-
Eligible Invention ........................................................................ 18

IV.   CONCLUSION ..................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd., v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) ................................................................................*passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
No. 1:10cv910, 2014 U.S. Dist. LEXIS 152447 (E.D. Va. Oct. 24, 2014) ..... 2, 7

*Bilski v. Kappos*,
561 U.S. 593 (2010) ........................................................................................ 10

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) ................................................................. 13, 19

*CMG Fin. Servs., Inc. v. Pac. Trust Bank, F.S.B.*,
No. CV 11-10344 PSG, 2014 U.S. Dist. LEXIS 145557 (C.D. Cal. Aug. 29,
2014) (Gutierrez, J.) ................................................................................... 1, 14

*Cogent Med., Inc. v. Elsevier Inc.*,
Nos. C-134479-RMW, C-13-4483-RMW, C-13-4486-RMW, 2014 U.S. Dist.
LEXIS 139856 (N.D. Cal. Sept. 30, 2014)................................................ 11, 14

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*,
No. 12-205-RGA, 2014 WL 3542055 (D. Del. July 16, 2014)......................... 14

*Compression Tech. Solutions LLC v. EMC Corp.*,
No. C-12-01746 RMW, 2013 WL 2368039 (N.D. Cal. May 29, 2013), *aff'd*, 557
Fed. App'x 1001 (Fed. Cir. Mar 10, 2014) ....................................................... 11

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ........................................................................ 15

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ........................................................................ 20

*DietGoal Innovations LLC v. Bravo Media, LLC*,
No. 13 Civ. 8391(PAE), 2014 WL 3582914 (S.D.N.Y. July 8, 2014) ........ 11, 14

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014) ................................................................. 10, 13

*Eclipse IP LLC v. McKinley Equip. Corp.*,
   No. SACV 14-cv-742-GW(AJWx), 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014)
   (Wu, J.) ................................................................................................ 1, 11, 14

*Enfish, LLC v. Microsoft Corp.*,
   No. 2:12-cv-07360-MRP-MRW, 2014 U.S. Dist. LEXIS 156760 (C.D. Cal.
   Nov. 3, 2014) (Pfaelzer, J.)............................................................ 1, 12, 13, 14

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*,
   No. 8:11-cv-2826-T-23TBM, 2014 U.S. Dist. LEXIS 127369 (M.D. Fla. Sept.
   11, 2014) ...................................................................................................... 14

*Gametek LLC v. Zynga, Inc.*,
   Nos. CV 13-2546 RS, CV-13-3089-RS, CV-13-3472-RS, CV-13-3493-RS, 2014
   WL 1665090 (N.D. Cal. Apr. 25, 2014)............................................................ 20

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*,
   No. 12-cv-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014) ............ 11

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) ........................................................................................ 15

*I/P Engine, Inc. v. AOL Inc.*,
   576 Fed. Appx. 982 (Fed. Cir. 2014) (Mayer, C., concurring) .................... 11, 13

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .......................................................................... 11

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   No. 2:13-CV-655, 2014 U.S. Dist. LEXIS 122244 (E.D. Tex. Sept. 3, 2014) .. 14

*Lumen View Tech, LLC v. Findthebest.com, Inc.*,
   984 F. Supp. 2d 189 (S.D.N.Y. 2013) ........................................................ 15, 16

*Mayo Collab. Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) .............................................................................. 12, 18

*McRO, Inc. v. Namco Bandai Games Am., Inc.*,
   No. CV 12-10322-GW(FFMx), 2014 U.S. Dist. LEXIS 135212 (C.D. Cal. Sept.
   22, 2014) (Wu, J.)................................................................................*passim*

*Open Text S.A. v. Alfresco Software Ltd.*,
   No. 13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ......... 14, 19

*Openwave Sys. Inc. v. Myriad France S.A.S.,*
   No. C 10–02805 WHA, 2011 WL 1832999 (N.D. Cal. May 13, 2011) ............ 11

*Parker v. Flook*,
   437 U.S. 584 (1978) ........................................................................................ 15

*Planet Bingo, LLC v. VKGS LLC*,
   No. 2013-1663, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014)......................... 13

*In re Roslin Inst. (Edinburgh)*,
   750 F.3d 1333 (Fed. Cir. 2014) ....................................................................... 10

*Tuxis Technologies., LLC v. Amazon.com, Inc.*,
   No. 13- 1771-RGA, 2014 U.S. Dist. LEXIS 122457 (D. Del. Sept. 3, 2014) 13,15

*Walker Digital, LLC v. Google, Inc.*,
   No. 11- 318-LPS, 2014 U.S. Dist. LEXIS 122448 (D. Del. Sept. 3, 2014) . 13, 15

*Wolf v. Capstone Photography, Inc.*,
   No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28, 2014)
   (Snyder, J.)................................................................................................. 1, 14

## Statutes

35 U.S.C. § 101................................................................................*passim*

## Other Authorities

Fed. R. Civ. P. 12........................................................................ 1, 10, 11

## I.  INTRODUCTION

Plaintiff's asserted claims are invalid under 35 U.S.C. § 101 as interpreted by the Supreme Court's recent decision in *Alice Corp. Pty. Ltd., v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355-60 (2014).  The *Alice* decision held that patent claims are invalid when, as here, they attempt to cover an abstract idea implemented on a generic computer. *Id.* In just the few short months following *Alice*, the Federal Circuit and district courts throughout the country have invalidated claims similar to those asserted by Plaintiff in no fewer than 16 cases – five from this district[1] – and many of those cases were decided in the context of Rule 12 motions.  The Court should do the same here and grant judgment on the pleadings on the threshold issue of patentability.

The asserted claims relate to nothing more exotic than showing advertisements to users.  Both patents claim the abstract ideas of (1) selecting which ad will be presented to a user based on something about that user (e.g. targeted advertising) and (2) allowing advertisers to submit bids to determine which ad will be shown and how prominently it will be displayed.  The targeted advertising and bidding concepts in the claims have been common since the advent of advertising, long before the Internet and the web.  The claims here add nothing patentable.

---

[1] *See, e.g., McRO, Inc. v. Namco Bandai Games Am., Inc.*, No. CV 12-10322-GW(FFMx), 2014 U.S. Dist. LEXIS 135212, at *44 (C.D. Cal. Sept. 22, 2014) (Wu, J.); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-cv-742-GW(AJWx), 2014 WL 4407592, at *6 (C.D. Cal. Sept. 4, 2014) (Wu, J.); *Enfish, LLC v. Microsoft Corp.*, No. 2:12-cv-07360-MRP-MRW, 2014 U.S. Dist. LEXIS 156760, at *37 (C.D. Cal. Nov. 3, 2014) (Pfaelzer, J.); *CMG Fin. Servs., Inc. v. Pac. Trust Bank, F.S.B.*, No. CV 11-10344 PSG (MRWx), 2014 U.S. Dist. LEXIS 145557, at *52 (C.D. Cal. Aug. 29, 2014) (Gutierrez, J.); *Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527, at *44 (C.D. Cal. Oct. 28, 2014) (Snyder, J.).

Plaintiff also cannot claim to have contributed any "inventive concept" under *Alice* because he copied more than half the patents' common specification from U.S. Patent No. 6,269,361, which was filed in 1999 and assigned to GoTo.com (subsequently Overture and now Yahoo!).   As explained below, Plaintiff's wholesale plagiarism from an earlier patent by an unrelated inventor confirms that the sole difference (if any) between Plaintiff's alleged invention and the earlier patent has nothing to do with technology, but with applying an abstract idea in a slightly different context.   For the reasons set forth below, therefore, the Court should grant judgment on the pleadings that the asserted claims are invalid as a matter of law under 35 U.S.C. § 101.   It is appropriate to do so at this stage of the case, so as to avoid the costs of continued litigation on patents whose claims do not even meet the threshold of patentability.[2]

## II.   BACKGROUND

### A.   The Patents-in-Suit

Plaintiff is asserting two patents in this case: U.S. Patent Nos. 7,904,337 and 8,341,020 (the "'337 patent" and "'020 patent" respectively)[3].   Both of these patents purport to cover methods for targeted advertising and bidding.

#### 1.   The '337 Patent Claims Abstract Ideas

The '337 patent purportedly relates to variations on two abstract ideas: (1) selecting which advertisement (for a "product, service or benefit")[4] will be

---

[2]   *See, e.g.*, *McRO*, 2014 U.S. Dist. LEXIS 135212, at *44 (invalidating claims under 35 U.S.C. § 101 on a 12(c) motion); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 1:10cv910 (LMB/TRJ), 2014 U.S. Dist. LEXIS 152447, at *29 (E.D. Va. Oct. 24, 2014) (same).

[3]   Citations to "('337, xx:yy-zz and '020, xx:yy-zz)" refer to column and line numbers in the '337 and '020 patents.   A copy of the '337 and '020 patents are attached to the Declaration of Elizabeth L. Stameshkin In Support of Defendant Facebook, Inc.'s Motion for Judgment on the Pleadings of Invalidity Under 35 U.S.C. § 101 ("Stameshkin Decl.") as Exhibit 1 and 2.

[4]   Plaintiff refers to "products, services and benefits" as "PSB" throughout the specification.

presented to a consumer based on information about that consumer (e.g., demographic information such as gender and age); and (2) using monetary bids from advertisers to determine whether and how an advertisement will be displayed. The goal of the alleged invention, according to the specification, is to allow advertisers to "quickly, easily, affordably, and confidentially target their messages to specific groups of consumers and receive prompt feedback as to the effectiveness of their advertising campaigns." ('337, 5:39-43.)

The specification plainly admits that the alleged novel feature of the "invention" is that these advertising concepts are on the Internet. The specification claims that "never before has there been an entity demographic, geographic, psychographic criteria targeted pay-for-performance system which allows product, service, and benefit provider/advertiser/promoters to pay for the exposure of their offerings to their desired targeted entities/marketplace(s) in real or substantially real time **via a computer network**."[5]  ('337, 9:46-55 (emphasis added).)   In other words, the alleged invention "applies market principles to PSB matching on the Internet." (*Id.*, 7:66-67.)

The '337 patent claims that are being asserted all depend from independent claims 12, 113, or 126.[6]  Each of these claims focuses on determining whether the advertiser's desired audience (such as persons of a specific age or gender) matches the characteristics of a particular consumer to determine whether to show that consumer a particular ad.  For example, the claims recite an ability to determine if there is a match between the "demographic" information (such as gender or age)

---

[5] Facebook disagrees with this characterization, but accepts it as true for purposes of this motion.

[6] Plaintiff is asserting 7 claims of the '337 patent: independent claims 12 and 113 and dependent claims 118, 119, 127, 128, and 129.  Dependent claims 127, 128, and 129 depend from independent claim 126.

with the consumer.[7]  The asserted claims, like claim 12, further recite that a "bid" is taken into account in determining whether and how to place that ad:

> A method of generating an advertising presentation using at least in part a computer-compatible network, comprising:
>
> maintaining a database including a plurality of advertisements, wherein each advertisement is associated with a provider and a modifiable bid amount that is independent of other component(s) of the advertisement, each advertisement being searchable;
>
> identifying the advertisement(s) having demographic and/or psychographic and/or firmographic criteria which generate at least a partial match with the entity;
>
> arranging the identified advertisement(s) into said advertising presentation at least in part in accordance with the values of the respective bid amounts for the identified advertisement(s).

('337, claim 12.)  The terms "demographic," "psychographic" and "firmographic" are well-known terms in advertising (both on and off the Internet) and were not an invention of Mr. Morsa. (*Id.*, 23:16-24 (surveys comprising demographic, geographic, psychographic, and firmographic questions "have been used for many decades and are well within the knowledge of those in the art").  "Demographic" information includes information such as a consumer's gender, age, and income; "psychographic" information includes information about a consumer's interests such as her hobbies; and "firmographic" information refers to information about a firm (or other non-human entity) such as its number of employees, industry type and revenue. (*See, e.g.*, '337, claim 94.)[8]

---

[7]  The '337 patent gives several examples of "demographic" information including age, gender, and income. ('337, claim 94.)

[8]  The term "multigraphic information" is a coined term by Plaintiff that refers to demographic, psychographic, and/or geographic information. ('337, 10:52-56.)

Neither claim 113 of 126 add anything patentable.  Claim 113 adds the use of "a partial match" and determining "the presentation order and/or size and/or dimensions and/or location of the advertisement" based on a "bid on an attribute." (*Id.*, claim 113.)  Unlike claim 12, claim 113 does not even require the use of a computer or generic computer component.  Claim 126 simply claims a "system" which does the steps of claim 113.  (*Id.*, claim 126.)

### 2.    The '020 Patent Claims Abstract Ideas

The '020 patent is a continuation of the '337 patent, and contains a nearly identical specification.  All asserted claims depend from either claim 1 or claim 97.[9] Independent claim 1 generally claims the use of both a bid and an advertisement's popularity in determining advertisement placement:

> A method comprising:
>
> receiving through a network from a first device connected to the network information associating one or more demographic and/or psychographic and/or firmographic criteria with an ad;
>
> receiving through the network from the first device or a second device connected to the network a bid associated with the criteria;
>
> determining, by at least one processor, ad placement based at least in part on (i) the bid and (ii) ad performance and/or ad popularity.

('020, claim 1.)  Claim 97 similarly allows for auctioning or bidding on any of  an "ad, entity, user, seeker, or entity criteria" associated with criteria, and for determining ad placement.  (*Id.*, claim 97.)

---

[9] Plaintiff is asserting thirteen claims of the '020 patent: independent claim 1 and dependent claims 2, 3, 5, 11-13, 18, 22, 23, 25, 29, and 108.  Dependent claim 108 depends from either claim 98 or 99, which each depend from independent claim 97. Similarly, dependent claims 22 and 23 depend from either claims 20 or 21, which depend from claim 1.

### 3. The Dependent Claims Add Nothing of Patentable Significance

The dependent claims of both patents add nothing concrete or non-abstract to the independent claims, requiring only the following:

- The use of "negative/contradictory criteria" to determine when <u>not</u> to present an advertisement, ('337, claims 118-119 and 129);
- Displaying ads next to content, (*id.*, claim 126);
- Determining a "presentation order and/or size and/or location" based on either the bid or other enumerated factors, (*id.*, claim 127).

The dependent claims of the '020 patent also add nothing patentable:

- enumerated types of "popularity" and other subjective "factors" that may be used in determining where and how an ad is placed, such as "actual popularity" and "desirability," (*id.*, claims 2, 99);
- basing ad placement "at least in part on the geographic location of an entity," (*id.*, claim 3);
- ad placement factors are "weighted," (*id.*, claims 11, 108);
- "displaying a bid amount that would improve ad placement" to an advertiser, (*id.*, claim 5);
- delivering ads to a generic "wireless device," (*id.*, claim 12);
- delivering "a video and/or audio ad," (*id.*, claim 13);
- "tracking activity and/or tracking performance," (*id.*, claim 18);
- either requiring or not requiring an exact match between the advertiser's desired attributes and a user, (*id.*, claims 20-21);
- using information from a questionnaire or profile in matching, (*id.*, claim 22);
- storing information about a user, (*id.*, claim 23);
- enabling or setting advertiser notifications, (*id.*, claim 27);
- only showing an advertisement at a certain time of day, (*id.*, claim 29); and
- a bid is one of multiple factors in determining ad placement, (*id.*, claim 98).

None of these additional limitations add anything patentable.  *See, e.g.*, *Amdocs*, 2014 U.S. Dist. LEXIS 152447, at *28 (invalidating dependent claims that did not "add sufficiently 'more' to render them patent eligible").

### B.   Plaintiff Only Overcame § 101 Rejections at the Patent Office by Relying on Pre-*Alice* Arguments

During the prosecution of both patents-in-suit, but before the Supreme Court's decision in *Alice*, the Patent Office ("PTO") rejected Plaintiff's claims for failing to claim patentable subject matter under 35 U.S.C. § 101.

For instance, during the prosecution of the '020 patent, "[b]ased upon consideration of all of the relevant factors with respect to the claim as a whole" the claims "are held to claim an abstract idea." (Stameshkin Decl. Ex. 3, Sept. 21, 2012 Non-Final Rejection at 3.)  Plaintiff overcame these rejections—at that time—by adding a requirement that ad placement be determined "by at least one processor." (Stameshkin Decl. Ex. 4, Oct. 2, 2012 Claims and Response to Office Action.) Back then, almost two years before *Alice*, some at the PTO believed that applicants could overcome abstract idea rejections by adding a generic computer to the claims. Today, the Supreme Court's decision in *Alice* makes clear that there mere adding of a generic computer is <u>not</u> enough.  *Alice*, 134 S. Ct. at 2358.

The PTO issued similar rejections during the prosecution of the '337 patent. (Stameshkin Decl. Ex. 5, March 2, 2010 Non-Final Rejection.)  Plaintiff responded by arguing that his claims were patentable based on the law of patent eligibility prior to *Alice.*  (Stameshkin Decl. Ex. 6, Aug. 31, 2010 Supplemental Resp. to Office Action.)  Plaintiff made these arguments almost four years before *Alice*.

The PTO's new internal guidelines, issued in the wake of *Alice*, make clear that Plaintiff's claims are not patentable. (*See* Stameshkin Decl. Ex. 7, http://www.uspto.gov/patents/announce/alice_pec_25jun2014.pdf.)   The new guidelines explain that "[r]equiring no more than a generic computer to perform generic computer functions that are well-understood, routine and conventional

activities previously known to the industry" will not convert an unpatentable abstract idea into a patent-eligible invention. (*Id*. at 3.) "[M]ere instructions to implement an abstract idea on a computer" is similarly insufficient. (*Id.*) Plaintiff's asserted claims – which attempt to cover abstract ideas applied to generic "devices" and "processors" – present textbook examples of precisely what is no longer eligible for patent protection under 35 U.S.C. § 101 and the PTO's guidelines.

## C. The Technology Described in the Specification is Generic and Was Copied from Prior Art

The "technology" in the asserted claims is nothing more than "a generic computer" performing "generic computer functions," which *Alice* makes clear cannot make an abstract idea patentable. For example, the "Detailed Description of the Invention" in the '337 describes the generic and conventional computer equipment used with the alleged invention, such as "client computers," "servers," and a "network" such as "the Internet," and describes basic webpage functionality and storage of information in databases. (*See, e.g.*, '337, 12:8-15:67.) The generic nature of these disclosures is further supported by the fact that all disclosures of anything "technical" were copied from prior art. In fact, the named inventor plagiarized all of the disclosures that could be considered technical from a prior art patent predating the patents-in-suit by five years. Thus, the generic computers discussed in the patent were known in the art and not Plaintiff's invention.

In particular, the passages cited above were copied nearly verbatim from U.S. Patent No. 6,269,361 (the "Goto.com patent") (Stameshkin Decl. Ex. 8), which was filed in 1999 and issued in 2001 to Goto.com. Figure 1 of the '337 and '020 patents purports to show "an example of a distributed system **10** configured as client/server architecture used in a preferred embodiment" of Plaintiff's purported invention. But that figure was copied from Figure 1 of the Goto.com patent:[10]

---

[10] The only difference between these two figures is the use of "match" engine in the place of "search" engine.

1

2

3

**Figure 1 of the '337 and '020 Patents:**



**Figure 1 of the Goto.com Patent:**

('337 patent, Fig. 1; Goto.com patent, Fig. 1.)   Although Plaintiff mentions the

Goto.com patent in his specification in passing ('337, 39:7-11), he failed to inform

the Patent Office that more than half of his specification and all but one of his figures were copied nearly verbatim from the Goto.com patent. The similarities between the two patents are striking. (*See, e.g.* '337 patent Figs. 1-9; '337,1:62-3:29, 5:30-6:3, 6:55-62, 7:61-9:29, 11:21-17:60, 18:3-25, 18:46-23:15, 25:43-26:15, 32:60-37:14.)[11]

Although Plaintiff's inexcusable and blatant plagiarism calls into question the legitimacy of his lawsuit against Facebook, for purposes of this motion, it shows that the asserted claims are directed only to abstract ideas applied to generic computers. Everything in the specification that even remotely resembles a discussion of the underlying technology was taken from the earlier Goto.com patent, confirming that the underlying technology was certainly known and generic by the time Plaintiff filed his first patent application. Although Plaintiff occasionally replaced the word "search" with "match," and added a few minor edits to the plagiarized material, he did not modify, let alone enhance, the technology discussed in the Goto.com patent in any material way.

## III.   ARGUMENT

### A.   Determination of Patent Eligibility is Appropriate on a Rule 12(c) Motion for Judgment on the Pleadings

The determination of patentable subject matter at this stage of the proceedings is both appropriate and necessary. The validity of the asserted claims under 35 U.S.C. § 101, which defines patentable subject matter, is a "threshold" issue for the Court to decide as a matter of law. *See, e.g.*, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014) ("Section 101 patent eligibility is a question of law that we review de novo."); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1348-49 (Fed. Cir. 2014).

---

[11]  Attached as Appendix B is a chart showing some examples of the extensive material Plaintiff copied from the Goto.com patent.

In fact, a court can and should rule on the threshold issue of patentability early in a case to "spare both litigants and courts years of needless litigation."  *I/P Engine, Inc. v. AOL Inc.*, 576 Fed. Appx. 982, 996 (Fed. Cir. 2014) (Mayer, C., concurring) (noting the "clear advantages to addressing section 101's requirements at the outset of litigation" including obviating the need for "lengthy claim construction"); *Eclipse*, 2014 WL 4407592, at *6   (quoting Judge Mayer's concurrence and dismissing for lack of patentable subject matter) (Wu, J.); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12-cv-1736-LPS-CJB, 2014 WL 4379587, at *6 (D. Del. Sept. 3, 2014) (same).

Following the Supreme Court's recent decision in *Alice*, discussed *infra*, many district courts have ruled on Section 101 invalidity without performing claim construction, including Judge Wu in this District on both a motion for judgment on the pleadings (*McRO*) and a motion to dismiss (*Eclipse IP*) under Rule 12.  *See McRO,* 2014 WL 4759953, at *44; *Eclipse IP*, 2014 WL 4407592 at *6; *see also, e.g.*, *Cogent Med., Inc. v. Elsevier Inc.*, Nos. C-134479-RMW, C-13-4483-RMW, C-13-4486-RMW, 2014 U.S. Dist. LEXIS 139856, at *19-*20 (N.D. Cal. Sept. 30, 2014); *DietGoal Innovations LLC v. Bravo Media, LLC*, No. 13 Civ. 8391(PAE), 2014 WL 3582914, at *16 (S.D.N.Y. July 8, 2014); *Compression Tech. Solutions LLC v. EMC Corp.*, No. C-12-01746 RMW, 2013 WL 2368039, at *3 (N.D. Cal. May 29, 2013), *aff'd*, 557 Fed. App'x 1001 (Fed. Cir. Mar 10, 2014) (accepting patentee's claim constructions for purposes of deciding patentability).[12]

---

[12] In ruling on a motion for judgment on the pleadings under Rule 12(c), the Court is not restricted to the four corners of the Complaint but may refer to materials subject to judicial notice.  *McRO*, 2014 U.S. Dist. LEXIS at *14 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). The prosecution history of the patents-in-suit and '337 patent, discussed throughout this brief, are official government records of the Patent Office properly subject to judicial notice.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (court may take judicial notice of matters of public record if the facts are not subject to reasonable dispute); *Openwave Sys. Inc. v. Myriad France S.A.S.,* No. C 10–02805 WHA, 2011 WL

## B.     The *Alice* Two-Part Test

The Supreme Court has long held that "[l]aws of nature, natural phenomena, and abstract ideas" are not patentable subject matter under Section 101.  *Alice*, 134 S. Ct. at 2354 (internal quotation omitted).  These limitations on patentability exist to prevent "monopolization" of "the basic tools of scientific and technological work" that "might tend to impede innovation … thereby thwarting the primary objective of the patent laws."  *Id.* (internal citations omitted).

In *Alice*, the Court reiterated held that a two-part test determines the patentability of claims covering an "abstract idea."  *Alice*, 134 S. Ct. at 2355.  First, the Court determines whether the claims "are directed to a patent-ineligible concept," such as an abstract idea.  *Id.*  As Judge Pfaelzer explained in *Enfish, LLC v. Microsoft Corp.*, No. 2:12-cv-07360-MRP-MRW, 2014 U.S. Dist. LEXIS 156760 (C.D. Cal. Nov. 3, 2014) (Pfaelzer, J.), "the court must identify the purpose of the claim—in other words, determine what the claimed invention is trying to achieve—and ask whether that purpose is abstract."  *Id.* at 7.

If the court finds the purpose to be abstract, it then proceeds to the <u>second</u> step of "search[ing] for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Id.* (quotation marks and brackets omitted).  These "additional elements" must be "more than simply stating the abstract idea while adding the words 'apply it.'"  *Alice*, 134 S. Ct. at 2357 (quotation marks and brackets omitted).  For example, a claim that adds "well-understood, routine, conventional activity" or technology – such as general-purpose computers – does not constitute an "inventive concept."  *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012).  "Thus, if a patent's

1832999, at \*4 (N.D. Cal. May 13, 2011) (taking judicial notice of patents and patent application that were at issue in the case, noting that the items were "matters of public record").

recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility." *Alice*, 134 S. Ct. at 2358 (citation, quotation marks, ellipses and brackets omitted).

Relying on the Supreme Court's decision in *Alice*, the Federal Circuit and district courts have increasingly found patents invalid under § 101. For example, in a non-precedential decision relying on *Alice*, the Federal Circuit invalidated claims on a computerized bingo game. *See Planet Bingo, LLC v. VKGS LLC*, No. 2013-1663, 2014 WL 4195188, at *2 (Fed. Cir. Aug. 26, 2014). Similarly, Judge Mayer found in a concurrence that claims directed to a "system which filters information for relevance to a user's query using combined content and collaborative data" would be invalid under 35 U.S.C. § 101. *I/P Engine*, 576 Fed. Appx. at 994 (Mayer, J., concurring). Recent precedential cases further illustrate the trend. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (invalidating claims that "are squarely about creating a contractual relationship—a 'transaction performance guaranty'—that is beyond question of ancient lineage"); *Digitech,*758 F.3d at 1351 (affirming the invalidity of "an ineligible abstract process of gathering and combining data.").

District courts across the country have also followed suit and invalidated claims under § 101 following the Supreme Court's guidance in *Alice*. In a case very similar to this one, *Tuxis Technologies., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, 2014 U.S. Dist. LEXIS 122457 (D. Del. Sept. 3, 2014), the court invalidated claims which covered "nothing more than suggesting an additional good or service, in real time over an electronic communications device, based on certain information obtained about the customer and the initial purchase." *Id.* at *13. In *Walker Digital, LLC v. Google, Inc.*, No. 11- 318-LPS, 2014 U.S. Dist. LEXIS 122448 (D. Del. Sept. 3, 2014), the court invalidated claims on "the basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters." *Id.* at *14. In *Enfish*, Judge Pfaelzer invalidated

claims that captured "the **concept** of organizing information using tabular formats" which "preempt a basic way of organizing information" as "it does not matter how memory is physically stored on the hardware." *Enfish*, 2014 U.S. Dist. LEXIS 156760 at \*20-\*21 (emphasis in original).  The list goes on.[13]  Applying the *Alice* test here compels the conclusion that the asserted claims are invalid under § 101.

### C.   The Asserted Claims of the '337 Patent are Directed to Abstract Ideas

As noted, the first step of the *Alice* test asks "whether the claims at issue are directed to a patent-ineligible concept," *e.g.*, whether they are directed to abstract ideas.  *Alice*, 134 S. Ct. at 2355.  Each asserted claim of  the '337 patent is directed

---

[13] *See*, *e.g.*, *McRO*, 2014 U.S. Dist. LEXIS 135212, at \*26-\*27 (invalidating claims directed to "automatically animating lip synchronization and facial expression of three-dimensional characters"); *Eclipse,* 2014 WL 4407592, at \*11 (invalidating claims to a "computer-based notification system"); *Cogent,* 2014 U.S. Dist. LEXIS, at \*11  (invalidating a patent directed to the abstract idea of "maintaining and searching a library of information"); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 WL 4684429, at \*4 (N.D. Cal. Sept. 19, 2014) (invalidating claims that recite abstract ideas for the "commonplace and time-honored practice of interacting with customers to promote marketing and sales");  *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 U.S. Dist. LEXIS 122244, at \*36-\*38 (E.D. Tex. Sept. 3, 2014) (invalidating claims to computerized loyalty rewards system); *CMG Fin. Servs., Inc. v. Pac. Trust Bank, F.S.B.*, No. CV 11-10344 PSG (MRWx), 2014 U.S. Dist. LEXIS 145557 (C.D. Cal. Aug. 29, 2014) (invalidating claims to system for automated account transactions) (Gutierrez, J.); *DietGoal,* 2014 WL 3582914, at \*3  (invalidating claims for "computerized meal planning"); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, No. 12-205-RGA, 2014 WL 3542055, at \*3-\*4 (D. Del. July 16, 2014) (invalidating claims which boiled down to "the very concept of a decision"); *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-cv-2826-T-23TBM, 2014 U.S. Dist. LEXIS 127369, at \*2-\*3 (M.D. Fla. Sept. 11, 2014), (invalidating claims covering "a method of and a system of automated saving or automated charitable giving"); *Wolf*, 2014 U.S. Dist. LEXIS 156527, at \*29 (invalidating claims directed to "providing event photographs organized by participant, as applied using the internet").

to the abstract ideas of matching an advertisement to a consumer based on information about the consumer, and allowing advertisers to bid on ad placement.

The claims are so abstract, in fact, that they could be performed by a human being using pen and paper, without the use of a computer at all, as illustrated in the chart attached as Appendix A.  For example, a distributor could use direct mail advertising to target advertisements to consumers, with advertisers bidding for placement in the direct mail campaign.  Plaintiff even refers to direct mail as "familiar" to "the many millions of smaller companies and professional practices," and uses Publisher's Clearing House as a specific example of a potential user of his proposed system.  ('337, 4:62-5:5; 37:46-56.)  Both the Supreme Court and the Federal Circuit have made clear that a method that "can be performed in the human mind, or by a human using a pen and paper . . . is merely an abstract idea and is not patent-eligible under § 101." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011); *see also Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (method that "can be done mentally" was an abstract idea); *Parker v. Flook*, 437 U.S. 584, 586 (1978) ("the computations can be made by pencil and paper calculations").

Multiple cases have recognized that computerized "matching" based on rules or requirements, as recited in the asserted claims, is an unpatentable abstract idea. *See, e.g., Tuxis*, 2014 U.S. Dist. LEXIS 122457, at *13 (finding invalid claims that suggest "an additional good or service . . . based on certain information obtained about the customer and the initial purchase"); *Walker Digital*, 2014 U.S. Dist. LEXIS, at *14 (finding invalid claims that added nothing meaningful to "the basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters" where information of a party is only released based on satisfaction of rules set by that party); *Lumen View Tech, LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189 (S.D.N.Y. 2013).

As in *Tuxis* and *Walker*, in *Lumen View*, the court found claims invalid that were remarkably similar to the ones asserted here.  The claims in *Lumen View* required that "one or more parties on each side input attribute preferences and intensity of preference data and then a computer matches the parties on each side by a 'closeness-of-fit' process and produces a list."  *Id.* at 192.  The *Lumen View* court further explained that claiming "the idea of bilateral and multilateral matchmaking using a computer in the context of a financial transaction or enterprise" was "preemptive in the broadest sense."  *Id.* at 198. There is no distinguishable difference between the matching of attribute preferences in *Lumen View* and the asserted claims' matching of an advertiser's audience preferences with a consumer's demographic information.

The concept of bidding for advertising placement is also an unpatentable abstract idea. Plaintiff's claims refer to "arranging" ads in accordance with a bid and determining "placement" of an advertisement or "presentation order and/or size of and/or dimensions of and/or location of the advertisement" based at least in part on a bid.  ('337, independent claims 12, 113, 126, and dependent claim 128.)  This is the same as placing an ad in a newspaper – an advertiser could pay more for a larger or more prominently placed ad, or could pay more to place an ad in a more popular section of the newspaper.

Even Plaintiff's copied source material, the Goto.com patent, describes such a bidding process as a "pay-for-performance" process that simply "applies market principles" (such as bidding) "to advertising on the Internet."  (Goto.com patent at 5:4-5; *see also* '337,7:64-67 (similar text).)  Reflecting fundamental economic and business realities, it also "helps ensure the pricing structure reflects the market and is accessible to providers of all budget sizes."  (Goto.com patent at 5:14-17; *see also* '337, 8:7-10 (identical text).)  Thus, even the source material plagiarized by Plaintiff admits the concept of an "online" bidding process is just the abstract idea of an auction combined with the Internet.

The fact that an advertiser would be willing to pay more to place an advertisement in a more prominent location or in a larger size is also an abstract idea. (*See, e.g.*, Goto.com patent at 4:3-6 ("The higher an advertiser's position on a search result list, the higher likelihood of a 'referral'; that is, the higher the likelihood that a consumer will be referred to the advertiser's web site through the search result list."); *see also* '337, 5:66-6:3 (substantially identical text).) For example, advertisers want to place their ad during the Super Bowl or on a highly trafficked billboard, and are willing to pay more to do so. Using a bidding system to determine whose advertisement gets the best placement cannot be a patentable advance.

The bidding system described in the patents-in-suit is also admitted prior art to the '337 patent, as demonstrated by the text copied from the Goto.com patent filed more than five years earlier. *See McRO*, 2014 U.S. Dist. LEXIS 135212, at *29 ("when determining whether a patent contains an adequate inventive concept, the Court must factor out conventional activity" that was "previously used in the field"). The common specification also admits that "[p]ay for placement database search systems have been developed in which advertisers bid on the placement of their listings in search results returned to a searcher in response to a world wide web query from a searcher." ('337, 2:43-46; *see also* '361, 4:65-5:1 ("In a preferred embodiment of the present invention, a web site promoter selects a search term and influences a position within the search result list generated by that search term by participating in an online competitive bidding process.").) Plaintiff even names Overture Services/Yahoo! (the successor to GoTo.com), Google, and FindWhat as offering preexisting systems for bidding on ad placement. ('337, 3:20-29.)

Finally, none of the additional dependent claims 118, 119, 127, or 129 add "sufficiently 'more'" to the independent claims to render them non-abstract. Displaying an advertisement next to content or using "negative" criteria to

determine not to match a user with an advertisement are just additional abstract variations on the claims from which they depend.

### D.     The Asserted Claims of the '020 Patent are Directed to Abstract Ideas

The '020 patent claims many of the same concepts as does the '337 patent – use of a bid to determine advertisement placement ('020, claim 1, 97-99), and matching demographic criteria of a user with an advertisement (*id.*, claims 20-21). Claims 1 and 99 of the '020 patent add the limitation of "popularity" or other performance related factors be accounted for in determining ad placement. (*See* '020, claims 1; *see also id.*, claims 98 and 99.)  But this is no different than a newspaper declining to include ads that would not be popular among its readers – such as those containing offensive or highly divisive content.

The dependent claims of the '020 patent fare no better.  The fact that an advertisement might be a video and/or audio ad or might be delivered to a wireless device just brings in more generic computer features, with no actual limitation in scope.  The chart attached as Appendix A further demonstrates that the dependent claims add nothing beyond abstract, unpatentable ideas.

### E.     The Asserted Claims Do Not Contain Anything That Transforms the Patent-Ineligible Abstract Ideas into Patent-Eligible Invention

*Alice*'s second step requires the Court to "examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quotation marks omitted).  A valid claim, thus, must include "additional features" beyond the abstract idea itself, which "requires more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* (quotation marks and brackets omitted).  It also requires more than the recitation of "well-understood, routine, conventional activity" or technology. *Mayo*, 132 S. Ct. at 1294.  In particular, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract

1   idea into a patent-eligible invention," particularly given "the ubiquity of

2   computers." *Alice*, 134 S. Ct. at 2358.  "Thus, if a patent's recitation of a computer

3   amounts to a mere instruction to implement an abstract idea on a computer, that

4   addition cannot impart patent eligibility."  *Id.* (citation, quotation marks, ellipses

5   and brackets omitted).

6       None of the asserted claims add any "inventive concept sufficient to

7   transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S.

8   Ct. at 2357.   At best, each asserted claim recites generic and conventional

9   computer-related equipment.   ('337, claim 12 ("computer-compatible network,"

10  "database") and claims 126-129 ("processor electronics configured to perform

11  operations," "device"); '020 claim 1 ("network," "first device," "second device,"

12  "processor"), claim 12 ("wireless device"), and claim 97 ("network," "device,"

13  "processor").)    Claim 113 does not set forth a single computer or other

14  technologically related feature at all.   None of the asserted claims mention or

15  envision any special technology or programming. *Open Text*, 2014 WL 4684429, at

16  *2 (invalidating claims that incorporated "[n]o special technology or programming"

17  and that implemented the abstract idea "on a generic computer system without any

18  meaningful limitations"); *see also*, *e.g.*, *buySAFE*, 765 F.3d at 1352 (invalidating

19  claims directed to computer transactions "via a computer network").

20      The specification further confirms that the alleged invention contemplates

21  only conventional, generic computer and network structures, to be programmed

22  with unspecified software. (*See, e.g.*, '337, 12:50-54 ("The client computers 12 can

23  be conventional personal computers (PCs), workstations, computer systems, etc."

24  which "typically includes one or more processors, memories, input/output devices,

25  and a network interface, such as a conventional modem"); 12:54-56 (the servers can

26  "be similarly configured"); Fig. 1.)   The verbatim copying from the Goto.com

27  patent further confirms that the underlying technology was known and generic.

28

Cooley LLP
Attorneys At Law
San Francisco                Case No.  8:14-cv-00161-JLS –JPR            19.            Facebook's Motion for Judgment
                                                                                        on the Pleadings

1   Although Plaintiff was able to overcome the § 101 rejection during the '020

2   prosecution by merely adding the words "by at least one processor," this will not

3   suffice under *Alice* as a matter of law because "the mere recitation of a generic

4   computer cannot transform a patent-ineligible abstract idea into a patent-eligible

5   invention." *Alice*, 134 S. Ct. at 2358.   The asserted claims accordingly recite

6   nothing more than "a mere instruction to implement an abstract idea" with software

7   in a conventional computer network instead of on paper, which "cannot impart

8   patent eligibility." *Id.*; *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333-34

9   (Fed. Cir. 2012) ("The claims are silent as to how a computer aids the method, the

10  extent to which a computer aids the method, or the significance of a computer to the

11  performance of the method."); *Gametek LLC v. Zynga, Inc.*, Nos. CV 13-2546 RS,

12  CV-13-3089-RS, CV-13-3472-RS, CV-13-3493-RS, 2014 WL 1665090, at *7

13  (N.D. Cal. Apr. 25, 2014) (finding patent invalid where claims recited a generic

14  computer network that was "merely the environment in which the abstract idea is

15  practiced.").

16  Even considering each claim as an "ordered combination" adds nothing to

17  confer patent-eligibility. *Alice*, 134 S. Ct. at 2359-60.   As in *Alice*, the "claims do

18  not, for example, purport to improve the functioning of the computer itself...  Nor

19  do they effect an improvement in any other technology or technical field...  Instead,

20  the claims at issue amount to nothing significantly more than an instruction to apply

21  the abstract idea"—such as receiving information about users, receiving bids and

22  advertisements   from   advertisers,   matching   users   and   advertisements,   and

23  determining   ad   placement—"using   some   unspecified,   generic   computer."   *Id.*

24  (citations   and   quotation   marks   omitted).   Under   *Alice*, "that   is   not   enough   to

25  transform an abstract idea into a patent-eligible invention." *Id.* (quotation marks

26  omitted).   Because the asserted claims "add nothing of substance to the underlying

27  abstract idea," they are "patent ineligible under § 101." *Id.* at 2360.

28

1     **IV.**    **CONCLUSION**

2         For the foregoing reasons, Facebook respectfully requests that the Court

3 grant its Motion for Judgment on the Pleadings, find that the asserted claims of the

4 patents-in-suit are invalid under 35 U.S.C. § 101, and dismiss the present action.

5

6 Dated:  November 13, 2014               COOLEY LLP

7

8

9                             */s/ Heidi L. Keefe*
                            Heidi L. Keefe

10

11                             Attorneys for Defendant
                            Facebook, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28